[Cite as *In re T.P.*, 2018-Ohio-1330.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF:<br>T.P., M.S., AND C.W.,<br>DEPENDENT CHILDREN | : | **O P I N I O N** |
| | : | |
| | : | **CASE NOS. 2018-A-0001**<br>**2018-A-0002** |
| | : | **2018-A-0003** |

Civil Appeals from the Ashtabula County Court of Common Pleas, Juvenile Division. Case Nos. 2016 JC 00052, 2016 JC 00053, and 2016 JC 00054.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047-1092; *Margaret A. Draper*, Assistant Prosecutor ACCSB, 3914 C Court, Ashtabula, OH 44004 (For Appellee Ashtabula County Children Services Board).

*Michael A. Hiener*, P.O. Box 1, Jefferson, OH 44047 (For Appellant Mariah Phillips).

*Eileen Noon Miller*, Law Offices of Eileen Noon Miller, LLC, P.O. Box 1681, Mentor, OH 44060 (Guardian ad litem).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Mariah Phillips, appeals from the December 8, 2017 judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, terminating appellant's parental rights and granting permanent custody of her children to appellee, Ashtabula County Children Services Board ("ACCSB"). This matter concerns the consolidated cases of appellant's three children: M.S., born April 27, 2012; T.P., born August 28, 2013;

and C.W., born August 26, 2015. Matthew Stecki (father of M.S. and T.P.) and Kevonta Wilson (father of C.W.), were also permanently divested of their parental rights but have not appealed the trial court's judgment. At issue is whether the trial court's determination that permanent custody is in the best interests of the children is supported by clear and convincing evidence. For the reasons that follow, the judgment is affirmed.

{¶2} In a previous matter, Ashtabula County case No. 2014 JC 0041, M.S. and T.P. were placed in the temporary custody of ACCSB on July 11, 2014. The children were returned to appellant, subject to protective supervision, on July 6, 2015. C.W. was born prematurely the following month, at 28 weeks. The case was closed in January 2016.

{¶3} The following month, on February 12, 2016, all three children were placed in the emergency temporary custody of ACCSB, upon the ex parte finding of probable cause to believe that the children were in immediate danger from their surroundings, they were in danger of immediate or threatened physical or emotional harm, and removal was necessary to prevent immediate or threatened physical or emotional harm. ACCSB filed complaints for temporary custody on February 16, 2016, alleging neglect due to appellant's heroin use while caring for the children.

{¶4} An adjudicatory hearing was held on March 14, 2016. The complaints were amended from an allegation of neglect to dependency. Appellant stipulated she needed drug treatment and was entering residential treatment that day. She further stipulated that both fathers were currently incarcerated. On April 5, 2016, the trial court approved and adopted the magistrate's decision, finding the children were dependent.

{¶5} At the disposition hearing on April 11, 2016, the magistrate found C.W. had extreme special needs, and the needs of all the children were being met in foster care. The magistrate determined ACCSB had made reasonable efforts to prevent the need for placement and to make it possible for the children to return home. The magistrate further found appellant had left residential treatment after eighteen days, appellant's whereabouts were unknown, and both fathers remained incarcerated. The trial court approved and adopted the magistrate's decision on April 28, 2016. The children therefore remained in the temporary custody of ACCSB, and a case plan was adopted.

{¶6} As of the semi-annual review hearing held on August 10, 2016, appellant's whereabouts remained unknown and Mr. Stecki remained incarcerated. Mr. Wilson had been released from incarceration but lacked employment and his housing was unstable; he identified an unnamed aunt in Allegheny County, Pennsylvania as a possible placement for the children. The children continued to have their needs met while in foster care and remained in the temporary custody of ACCSB.

{¶7} On January 11, 2017, ACCSB filed a motion requesting modification of temporary custody to permanent custody.

{¶8} An annual review hearing was held on February 9, 2017. Appellant's whereabouts continued to be unknown, and Mr. Stecki remained incarcerated. Mr. Wilson had last seen C.W. over a year prior, on January 29, 2016. Mr. Wilson stated he was employed and was residing with his girlfriend when not travelling for work. He named his aunt in Pennsylvania, Adrianne Foster, and stated she may be interested in caring for C.W. The children continued to have their needs met while in foster care and remained in the temporary custody of ACCSB pending the permanent custody hearing.

3

{¶9} The hearing on the permanent custody motion commenced on August 30, 2017. All three parents were incarcerated at the time of the hearing, but they were all in attendance. ACCSB presented the testimony of two caseworkers, Sarah Branham and Christy Lalli. The caseworkers testified that appellant did not in any way comply with her case plan. Appellant visited the children sporadically during the months of April, May, and June 2016. The last time she visited the children was on July 25, 2016. Her visitations were cancelled after a period of no-shows, and she did not request to have them reinstated.

{¶10} Ms. Branham testified that Mr. Wilson met with her once in September 2016 and completed a drug screen. After that, the caseworkers testified, he did not meet any case plan objectives and never provided ACCSB with his residential address or proof of income. The last time Mr. Wilson saw C.W. was on January 29, 2016, prior to her removal from the home; he did not visit C.W. during the time she was in the temporary custody of ACCSB. Ms. Lalli testified that she requested to meet with Mr. Wilson after the semi-annual review hearing, but he did not comply.

{¶11} Mr. Stecki did not have any contact with the agency while Ms. Branham was assigned to the case. Ms. Lalli testified that, after she took over, Mr. Stecki contacted the agency by letter dated February 21, 2017, which included drawings and letters for M.S. and T.P. He also contacted the agency by phone after he was served with the permanent custody motion and indicated he was attending parenting classes in prison and wanted to maintain his parental rights. Mr. Stecki has been incarcerated on charges related to felony illegal manufacturing of drugs since October 2013 when T.P. was two months old

4

and M.S. was one and one-half years old.  He is not scheduled to be released from prison until December 2019.

{¶12}  Testimony was also elicited from Ms. Lalli regarding the needs and best interests of the children.  M.S. is in kindergarten and receives counseling for mental health issues.  T.P. is doing well in preschool.  C.W. has extreme special needs, due to complications from her premature birth, including cognitive disabilities, developmental delays, asthma, and cerebral palsy.  She takes albuterol, receives yearly neurological examinations, wears leg braces, receives occupational therapy on a weekly basis, and requires constant supervision because of mobility issues.  She will also need speech therapy in the future.  Ms. Lalli testified the children are all bonded to each other and should not be separated for placement.  The foster parents are interested in adopting the children, and Ms. Lalli has no concerns about the children's care with the foster family.  The home has four bedrooms, a large yard, and many toys.  C.W. sleeps in a crib and the older children share bunk beds.

{¶13}  Ms. Lalli testified that Mrs. Foster, Mr. Wilson's aunt, first contacted her as a possible placement for C.W. in April 2017, after the permanent custody motion had been filed.  Ms. Lalli worked with Mrs. Foster, who is a licensed foster parent in Pennsylvania, concerning the interstate proceedings.  Over the next few months, Ms. Lalli repeatedly requested Mrs. Foster's licensure and a copy of a Home Study; she gave Mrs. Foster a fax number where her caseworker could submit the documents.  Ms. Lalli did not receive the requested documents from Mrs. Foster until the day of the permanent custody hearing.  She also testified that Mrs. Foster could still be considered as an adoptive placement for the children if the agency was granted permanent custody.

{¶14} Mrs. Foster also testified. Mrs. Foster lives in Pennsylvania and has custody of, and is in the process of adopting, Mr. Wilson's 13-year-old child, who was introduced to C.W. in Spring 2017. Mrs. Foster also introduced C.W. to another of Mr. Wilson's children, who lives with a custodian in Ashtabula, Ohio. Mr. Wilson has several children, none of whom are in his custody.

{¶15} Mrs. Foster testified that Mr. Wilson contacted her in September 2016 about C.W.'s removal but that ACCSB told her they were trying to keep the children together and return them to the home at that time. Mrs. Foster testified the agency told her she would be considered for placement if things changed. She stated she next contacted ACCSB in February 2017 and multiple times during March 2017, after she learned of the permanent custody motion, and informed ACCSB of her willingness to adopt C.W. Mrs. Foster testified she had not made any efforts at contact in the meantime because she thought the agency was still working towards reunification.

{¶16} Mrs. Foster further testified that Ms. Lalli requested a copy of her licensure, which they do not have in Pennsylvania; she sent a cell phone picture of her certificate to Ms. Lalli via e-mail and was told that was insufficient. She provided contact information for her Pennsylvania case workers and signed release forms so they could speak to ACCSB. Mrs. Foster stated her Home Study was not completed until three weeks prior to the hearing. She also testified she was not aware she needed to file a motion requesting legal custody or a motion to intervene.

{¶17} Mrs. Foster testified that, if necessary and if in C.W.'s best interest, she would provide a home for all three children, but that she would prefer to receive placement only of C.W. She would also prefer to adopt, as opposed to receiving legal custody. Mrs.

Foster stated she has experience caring for children with disabilities, both as a family member and as a home healthcare provider.

{¶18} The guardian ad litem submitted her report and recommended that the best interests of the children is to grant permanent custody to ACCSB so they can receive a legally secure placement with the foster family.

{¶19} On December 8, 2017, the trial court issued findings of fact and conclusions of law. The trial court granted ACCSB's motion for permanent custody of the three children and terminated the parental rights of appellant, Mr. Stecki, and Mr. Wilson.

{¶20} Appellant filed a timely notice of appeal and asserts two assignments of error for our review:

> [1.] The trial court erred when it determined permanent custody was in the best interest of the minor children without considering R.C. 2151.414(D)(2)(d) when a family member sought custody of the minor children.

> [2.] The trial court's decision is against the manifest weight of the evidence.

{¶21} The trial court must apply a two-pronged analysis when ruling on a motion for permanent custody. Pursuant to R.C. 2151.414(B)(1), the court may grant permanent custody only if the court determines at the hearing, by clear and convincing evidence, that it is in the best interest of the child to do so *and* that one of the following factors applies:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's

7

parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶22} The trial court determined (B)(1)(b) applies because there was clear and convincing evidence that all three children had been abandoned. It further determined there was clear and convincing evidence that (B)(1)(d) applies to M.S. and T.P., who had been in the temporary custody of ACCSB for 12 months of a consecutive 22-month period. Alternatively, the trial court determined there was clear and convincing evidence that the children cannot be placed with any parent within a reasonable time and should not be placed with any parent. Therefore, assuming (B)(1)(b) and (d) did not apply for any reason, (B)(1)(a) also applies to all three children.

{¶23} The trial court then engaged in the best interest analysis and found, by clear and convincing evidence, that it is in the best interests of the children to grant permanent custody to ACCSB.

8

{¶24} Appellant's assignments of error on appeal solely relate to the trial court's best interest determination.

{¶25} Under her first assignment of error, appellant argues that Mrs. Foster, C.W.'s paternal aunt, made a sufficient request for custody under R.C. 2151.414(D)(2)(d) to prevent a finding that permanent custody was in the best interests of the children. Appellee responds that Mrs. Foster did not comply with the custody process, therefore the trial court did not err in finding permanent custody was in the best interests of the children.

{¶26} R.C. 2151.414(D)(2) provides that, "[i]f all of the following apply, permanent custody is in the best interest of the child, and the court shall commit the child to the permanent custody of a public children services agency or private child placing agency:

> (a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.
>
> (b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.
>
> (c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.
>
> (d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

{¶27} Even if Mrs. Foster had made a sufficient request for custody under subsection (d), the trial court could not have relied on R.C. 2151.414(D)(2) for the best interest determination, because subsection (b) was not satisfied: the children had not been in the custody of ACCSB for two years or longer. Further, "R.C. 2151.414(D)(2)

9

applies only as an alternative basis for the trial court to determine that the termination of parental rights is in the best interest of the children." *In re B.R.C.*, 11th Dist. Portage Nos. 2013-P-0059 & 2013-P-0060, 2014-Ohio-69, ¶57, citing *In re J.B.*, 8th Dist. Cuyahoga No. 97995, 2012-Ohio-3087, ¶22, fn.2 and *In re M.K.*, 10th Dist. Franklin Nos. 09AP-1141 & 09AP-1142, 2010-Ohio-2194, ¶22. When there are sufficient grounds under the factor analysis found in R.C. 2151.414(D)(1), as outlined below, the trial court need not resort to R.C. 2151.414(D)(2) to determine whether permanent custody is in the children's best interests. *Id.*

{¶28} Here, the trial court determined that granting permanent custody was in the best interests of the children based on findings made under R.C. 2151.414(D)(1). Therefore, assuming these findings are supported by clear and convincing evidence, the trial court was not required to determine whether Mrs. Foster made a sufficient request for custody under R.C. 2151.414(D)(2)(d) to prevent a finding that permanent custody was in the best interests of the children.

{¶29} R.C. 2151.414(D)(1) provides that, in determining the best interest of a child at a permanent custody hearing, "the court shall consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or

10

more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶30} We review the trial court's R.C. 2151.414(D)(1) findings under appellant's second assignment of error. Appellant argues the trial court's determination that permanent custody was in the best interests of the children was not supported by clear and convincing evidence, as required under R.C. 2151.414(B)(1), and is therefore against the manifest weight of the evidence.

{¶31} The Ohio Supreme Court "has defined clear and convincing evidence as 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶42, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶32} "When reviewing the weight of the evidence, the reviewing court 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be

11

reversed and a new trial ordered.'" *In re H.J.*, 11th Dist. Ashtabula No. 2017-A-0068, 2018-Ohio-206, ¶16, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley*, *supra*, at ¶21.

{¶33} The trial court analyzed the evidence as it pertained to each of the relevant factors under R.C. 2151.414(D)(1) in determining the best interests of the children.

{¶34} The trial court first considered "[t]he interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child," pursuant to (D)(1)(a). It determined appellant had not interacted with the children since July 2016; Mr. Stecki has had no relationship with M.S. and T.P. since February 2016; and Mr. Wilson last saw C.W. in January 2016. There is no evidence of any bond remaining between appellant and the children; there is no evidence of any bond between C.W. and Mr. Wilson; and M.S. and T.P. exhibited fear when Mr. Stecki last contacted them with letters by mail, which may be due to a lack of memory of him.

{¶35} The trial court considered Mrs. Foster, C.W.'s aunt, as the only identified relative with an interest in any of the children. In that regard, the court found Mrs. Foster had only ever seen C.W. once, and there is no evidence of any relationship between the two of them or between C.W. and Mr. Wilson's many other children, none of whom are in his custody.

{¶36} The trial court further determined the following:

> The children are placed together in a certified foster home where they have been since their removal on February 12, 2016. The children reside with the foster father and foster mother and the four biological children of the foster parents. The children interact as

12

siblings with the four other children in the home, and act towards one another in such a way that there is no observable difference between the interaction or treatment of the biological children and foster children. The three children are bonded to each other, and the caseworker did not recommend separating the siblings from one another. The two older children as well as the foster siblings are protective of [C.W.], which may be heightened due to her special needs.

{¶37} With regard to (D)(1)(b), "the wishes of the child" factor, the trial court stated that no party had requested an in camera interview of the children, no such hearing was conducted, and the wishes of the children had been communicated to the court by the guardian ad litem. The court determined:

Although the children are of tender years and are limited as to maturity, the Guardian ad litem recommended that Permanent Custody be granted as being the children's best interest and made that recommendation on their behalf. Even assuming [M.S.] at the age of 5 has sufficient maturity to express his wishes, he has clearly done so in that he has communicated his desire to be adopted and to have the same last name of the foster family as the only stable home in which he has resided.

{¶38} Next, the trial court considered the "custodial history of the child," pursuant to (D)(1)(c). M.S. and T.P. had been in the temporary custody of ACCSB for over 12 months of 22 consecutive months and had been removed twice from appellant's care. All three children had resided in the same foster home since their removal in February 2016.

{¶39} The trial court next considered the children's "need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency," pursuant to (D)(1)(d). The court stated: "As reflected in the Guardian ad litem's report and evidence presented, the children need a legally secure placement and such a legally secure placement cannot be achieved without a grant of permanent custody to the agency. The children's foster home has

13

expressed an interest in adopting the children." The trial court additionally acknowledged that, "although her interest was expressed late in the process, as of the date of the Permanent Custody hearings, Mrs. Foster was expressing her desire to be considered as an adoptive placement for [C.W.]. As of the date of her testimony, Mrs. Foster was stating an interest in maintaining the three siblings together, although she had never met the older two children." The trial court concluded there was clear and convincing evidence that a legally secure permanent placement of the children cannot be achieved without a grant of permanent custody to ACCSB.

{¶40} Finally, pursuant to (D)(1)(e), the trial court considered the relevant factors listed in R.C. 2151.414(E). There was no evidence presented with regard to the factors listed in R.C. 2151.414(E)(7), (8), (9), or (11). There was, however, clear and convincing evidence to support a finding that the children were abandoned by their parents, as provided in R.C. 2151.414(E)(10). "[A] child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C).

{¶41} Appellant failed to maintain contact with the children after July 25, 2016, and failed to make any attempt to resume contact thereafter. Mr. Stecki's last visit with M.S. and T.P. occurred prior to their February 12, 2016 removal, and there was no contact thereafter until he sent them a letter and drawings. The date of the letter is unclear, but the evidence established it occurred after the motion for permanent custody was filed on January 11, 2017. Mr. Wilson's last contact with C.W. occurred on January 29, 2016, which was also prior to her removal, and he failed to seek any visitation or make any other

14

efforts to see C.W. Based on these facts, the trial court determined each of the parents had failed to maintain contact with their children for a period of 90 days or more, and, therefore, the children were abandoned.

{¶42} The trial court's decision is not against the manifest weight of the evidence. The record, which includes the transcript of the permanent custody hearing, supports the trial court's determination, by clear and convincing evidence, that it is in the best interests of M.S., T.P., and C.W. to be placed in the permanent custody of ACCSB.

{¶43} Appellant's first and second assignments of error are without merit.

{¶44} The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.