[Cite as *In re A.N.F.*, 2018-Ohio-3689.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re: | : | |
| A.N.F., | : | No. 17AP-905 |
| | | (C.P.C. No. 15JU-15028) |
| (K.B., | : | |
| | | (REGULAR CALENDAR) |
| Appellant). | : | |
| | : | |

D E C I S I O N

Rendered on September 13, 2018

**On brief:** *Robert J. McClaren,* for appellee Franklin County Children Services.

**On brief:** *Yeura Venters,* Public Defender, and *Ian J. Jones,* for appellant K.B.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

HORTON, J.

{¶ 1} Appellant-mother, K.B., appeals from a December 8, 2017 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, that terminated her parental rights and granted permanent custody of her minor daughter, A.N.F. ("A.F."), to Franklin County Children Services ("FCCS"). For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The facts and procedural history, as relevant to this appeal, are as follows. On December 11, 2015, FCCS filed a complaint in Franklin C.P. No. 15JU-15028 on behalf of A.F., a minor born on May 22, 2015, alleging two counts of abuse, one count of neglect, and one count of dependency, and named appellant as mother and D.F. as father.[1]

---

[1] The putative father, D.F., was later excluded by DNA testing as the biological father of A.F. and was dismissed as a party to this action on June 14, 2017.

{¶ 3}   At the time the complaint was filed, the family had already been involved with FCCS for six years. Appellant had lost legal custody of one child, A.W., to the child's father in a juvenile dependency action, Franklin C.P. NO. 13JU-9661, but had parenting time rights. Another child, K.M.B., had been adjudicated neglected and dependent in November 2011, and permanent custody had been granted to FCCS in Franklin C.P. No. 11JU-11768. In addition, another child, A.B., had died when she was six months old.

{¶ 4}   By way of history, appellant has been convicted of five felonies and has been incarcerated multiple times. Appellant pled guilty to criminal endangering of her son, K.M.B, in May 2012. In July 2012, she was indicted for forgery and receiving stolen property, and pled guilty to both counts. When A.F. was born, she and appellant tested positive for marijuana, but A.F. remained with appellant.  However, when A.F. was approximately four months old, appellant was indicted for tampering with evidence and gross abuse of a corpse.  She would later plead guilty to both charges. Appellant also had a history of mental health problems. There were concerns of schizophrenia, depression, and possible Munchausen syndrome.

{¶ 5}   The complaint alleges A.F. and other siblings were left unsupervised in the home for an unknown period of time. On September 14, 2015, a dead man was found in the home's basement. D.F. and appellant were suspects in that apparent homicide. Shortly after, appellant and D.F. were arrested and incarcerated and A.F. was removed and, after a temporary order of custody to FCCS on September 15, 2015, was placed in a foster home where she has remained until the present.

{¶ 6}   At the adjudication hearing on February 1, 2016, the abuse counts were dismissed and, in an uncontested proceeding, A.F. was found to be neglected and dependent. The court made the child a ward of the court and committed her to the temporary custody of FCCS. A case plan hearing and an annual review hearing was scheduled. On August 18, 2016, the magistrate issued a Civ.R. 60(A) decision adjudicating A.F. to be dependent only. This was adopted by the court.

{¶ 7}   On August 19, 2016, FCCS filed a motion for permanent custody of A.F.  On October 26, 2017, FCCS filed another motion for permanent custody to add the allegation of FCCS custody for 12 or more months of a consecutive 22-month period.  Eventually, on November 27, 2017, a trial was held on the motion. Testifying at the trial were appellant,

attorney John Ryerson as Guardian ad Litem for A.F., and caseworker David Phinney from The Buckeye Ranch.

{¶ 8}   At the trial, the following facts were noted by the trial court. Appellant's case plan was filed on February 9, 2016, and was approved and adopted as a court order, and clearly states the requirements for reunification with A.F. Appellant was to obtain/maintain stable appropriate housing; provide proof of legal verified income; complete an alcohol or other drug ("AOD") assessment and follow through with all recommendations; allow A.F., along with herself, to actively participate in the Infant Wellness Program and Help Me Grow; complete drug screens through ACS; comply with any and all requirements of probation; sign the release of information for service providers; and, make herself available to meet with the caseworker at least once monthly. Appellant was also to visit with A.F.

{¶ 9}   All reviews indicate appellant made insufficient progress on the case plan. Specifically, visits with A.F., even after appellant was released from incarceration, were inconsistent with over 50 percent missed.  In regards to stable housing, appellant has provided a 2-year lease on an appropriate home for children, however, the trial court states that it "may be a stretch to claim she has maintained stable housing when she has only lived there three months, and has not provided proof she is current with her rent and water bill of $600 per month." (Dec. 8, 2018 Decision and Jgmt. Entry at 11.)  Appellant has worked only sparingly throughout the case. She has never provided proof of employment except showing on her phone proof of her recent employment for just one month.

{¶ 10} An AOD assessment was just taken in March 2017, but there is no evidence of completion of AOD treatment. There is no evidence she participated in the Infant Wellness Program or Help Me Grow. She has not participated in a parenting class. Performance of drug screens throughout the case has been, in the trial court's word, "abysmal." (Decision and Jgmt. Entry at 12.)  In August 2015, when she linked with ACS, she had one clean screen, one dirty screen, missed five screens, and missed thirty calls. She was incarcerated from September 2015 to January 14, 2016, pending a criminal trial. Her bond was revoked and she was again incarcerated. Once freed, she relinked with ACS on May 5, 2016, but from that date until July 30, 2016, she never called in once nor performed one drug screen at ACS.  Failure of consistent random screening, and failure to complete AOD treatment for two years, "cannot lead the court to the conclusion that her drug issues have been resolved to insure the safety of her child." (Decision and Jgmt. Entry at 12.)

{¶ 11} Appellant was also referred to counseling in January 2016. Her psychologist recommended long term psychotherapy, parenting classes, and continued drug screens. None of those recommendations were completed. Appellant was referred for a mental health assessment in March 2017, where she did take two mental health assessments and began counseling in April or May. However, she has been inconsistent in compliance, still exhibiting erratic, emotional behavior, much trauma and loss.

{¶ 12} The trial court noted that appellant has had:

> [R]epeated incarcerations for felonies and absconding. She lost one infant who died at six months under mysterious circumstances. One child, after she faked his illness to hospitalize him was permanently committed to FCCS in 2014. * * * Yet the causes for removal of these children continued unabated and still have throughout [A.F.'s] case. While mother appears to have begun to address her problems, she has in no way successfully completed a case plan which has travelled over many cases for six years, and this particular child for over two years. The child cannot be returned to mother within a reasonable period of time.

(Decision and Jgmt. Entry at 13-14.)

{¶ 13} On December 8, 2017, the trial court issued its decision and judgment entry stating:

> [A.F.] is integrated into a foster family where foster parents wish to adopt her and where all of her needs have been successfully fulfilled. They are the only family with whom she has ever resided.
>
> Given these facts, [A.F.] is in great need of a secure permanent placement to continue her development physically, educationally, emotionally, and socially, which cannot be achieved without a grant of permanent custody to the agency for purposes of adoption.
>
> * * *
>
> Clear and convincing evidence exists that granting FCCS' request for Permanent Custody is in [A.F.'s] best interest. Under R.C. §2151.414(B)(1)(d), there is clear and convincing evidence that the child has been in the custody of Franklin County Children Services for more than 12 out of 22 consecutive months.
>
> * * *

> The Court has carefully reviewed the testimony and evidence presented, the entire file, and the applicable law. The Court hereby finds that Permanent Custody is in [A.F.'s] best interest. Accordingly, the Court hereby GRANTS FCCS's request for Permanent Custody. Therefore, [A.F.] is committed to the Permanent Custody of FCCS for the purposes of adoption.
>
> Based upon the foregoing findings of fact, and pursuant to R.C. §2151.417, the Court hereby determines that continuation in the child's own home would be contrary to the child's best interests; that Franklin County Children Services has made reasonable efforts to prevent or eliminate the need for removal of said child from the child's own home. Reasonable efforts have also been made to finalize the permanency plan in effect for the child.

*Id.* at 14-15.

## II. ASSIGNMENT OF ERROR

{¶ 14} Appellant appeals and asserts as the sole assignment of error:

> THE TRIAL COURT ERRED WHEN IT FOUND THAT THE AGENCY HAD MADE REASONABLE EFFORTS TO RETURN THE CHILD TO HER MOTHER'S HOME.

## III. DISCUSSION

{¶ 15} A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Andy-Jones*, 10th Dist. No. 03AP-1167, 2004-Ohio-3312, ¶ 28. Permanent custody judgments which are supported by some competent, credible evidence going to all essential elements of a case will not be reversed as being against the manifest weight of the evidence. *In re Brofford*, 83 Ohio App.3d 869, 876-77 (10th Dist.1992). "In reviewing a judgment granting permanent custody to FCCS, an appellate court 'must make every reasonable presumption in favor of the judgment and the trial court's findings of facts.' " *In re J.T.*, 10th Dist. No. 11AP-1056, 2012-Ohio-2818, ¶ 8, quoting *In re P.G.*, 10th Dist. No. 11AP-574, 2012-Ohio-469, ¶ 37. "Furthermore, 'if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment.' " *In re Brooks*, 10th Dist. No. 04AP-164, 2004-Ohio-3887, ¶ 59, quoting *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988).

{¶ 16} A parent's liberty interest "in the care, custody, and control of their children" is a fundamental right guaranteed by the Due Process Clause of the Fourteenth Amendment. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Thus, termination of parental rights "should be an alternative of 'last resort.' " *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, ¶ 11, quoting *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979). A parent faced with the state's motion for permanent custody " 'must be afforded every procedural and substantive protection the law allows.' " *In re D.A.* at ¶ 10, quoting *In re Hayes*, 79 Ohio St.3d 46, 48 (1997). "The fundamental interest of parents is not absolute, however. Once the case reaches the disposition phase, the best interest of the child controls." *In re D.A.* at ¶ 11. To terminate parental rights, a court must find "by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody," after considering the best interests of the child in light of a number of statutory factors. R.C. 2151.414(B)(1).

{¶ 17} Initially, we note that while appellant does not raise the issue in an assignment of error, she attempts to challenge the trial court's finding that A.F. is a dependent child. Appellant alleges that A.F. was removed from her because she was arrested and held on charges based on an incident for which she was not responsible. Appellant further claims that when she was released from jail, the reason for the child's removal no longer existed. However, there was no timely appeal of the adjudication of dependency and the grounds for removal.

{¶ 18} This court is without the power to reexamine the trial court's dependency adjudication. The statute is clear: "The adjudication that the child is an abused, neglected, or dependent child and any dispositional order that has been issued in the case under section 2151.353 of the Revised Code pursuant to the adjudication shall not be readjudicated at the hearing" on a motion for permanent custody. R.C. 2151.414(A)(1). A trial court's adjudication of dependency is a final appealable order. *In re Murray*, 52 Ohio St.3d 155 (1990), syllabus. Furthermore, the Supreme Court of Ohio has expressly held that there is no exception to the 30-day time limit for filing an appeal under App.R. 4 of an adjudication of abuse, dependency, or neglect to allow the matter to be re-litigated if an agency subsequently seeks permanent custody of a child. *In re H.F.*, 120 Ohio St.3d 499, 504, 2008-Ohio-6810, ¶ 15.

{¶ 19} In this case, appellant did not appeal the dependency adjudication of A.F. The issue of A.F.'s dependency adjudication is settled and appellant may not re-litigate that determination. *See also In re E.R. J.R.,* 10th Dist. No. 17AP-82, 2017-Ohio-7188, ¶ 50, holding that "this court is without the power to reexamine the trial court's dependency adjudication."

{¶ 20} We now turn to appellant's assignment of error. Appellant alleges that FCCS did not make reasonable efforts to reunify the child with appellant. Under R.C. 2151.413(D)(1), "[i]f a child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, the agency with custody shall file a motion requesting permanent custody of the child." The statute also defines several circumstances when an agency may not file such a motion. Under R.C. 2151.413(D)(3)(b), an agency may not file for permanent custody "[i]f reasonable efforts to return the child to the child's home are required under section 2151.419 of the Revised Code, [and] the agency has not provided the services required by the case plan to the parents of the child or the child to ensure the safe return of the child to the child's home." R.C. 2151.419(A)(1) states that an agency must prove that it has made "reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home."

{¶ 21} However, the reasonable efforts requirement under "R.C. 2151.419(A)(1) does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 43. This is because a child support agency must have proven reasonable efforts prior to filing a motion for permanent custody. *In re E.R. J.R.* at ¶ 53. "If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *In re C.F.* at ¶ 43. Thus, if the record reflects that the trial court has made a finding that the children services agency has made reasonable efforts as required by R.C. 2151.419(A)(1), the 2151.413(D)(3)(b) prohibition on filing a motion for permanent custody does not apply. *See In re K.L.*, 10th Dist. No. 13AP-218, 2013-Ohio-3499, ¶ 40.

{¶ 22} Here, the magistrate filed a decision on February 9, 2016, which was adopted by the trial court. The decision included the following finding: "Continuation in the child's own home would be contrary to the child's welfare and that reasonable efforts have been

made to prevent or eliminate the need for removal of said child from the child's own home." (Feb. 9, 2016 Mag. Decision at 1.)   At that time, the permanency goal for A.F. was reunification, pursuant to the case plan in effect. (Feb. 9, 2016 Case Plan at 1.)   These findings satisfy the reasonable efforts requirement under R.C. 2151.419(A)(1). *In re K.L.* at ¶ 40. Accordingly, the R.C. 2151.413(D)(3)(b) prohibition did not apply, and FCCS appropriately filed the motions for permanent custody on August 19, 2016, and October 26, 2017.

{¶ 23} In addition, reasonable efforts were not required in this case. R.C. 2151.419(A)(2)(e) provides that:

> (2) If any of the following apply, the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home:
>
> * * *
>
> (e) The parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections.

Appellant's child, K.M.B., was involuntarily committed to the permanent custody of FCCS. As such, the trial court was required to make a determination that reasonable efforts were not required. Thus, as a matter of law, reasonable efforts to reunify with appellant were not required by FCCS. *See In re R.B.*, 6th Dist. No. L-09-1274, 2010-Ohio-4710, ¶ 23; *In re Craig*, 5th Dist. No. 2006P030014, 2006-Ohio-3026, ¶ 17; *In re Brown*, 5th Dist. No. 2008 CA 00029, 2008-Ohio-3655, ¶ 26. However, as demonstrated below, FCCS attempted reasonable efforts to engage appellant in completing a reunification case plan.

{¶ 24} Although the trial court was not required to address the issue of reasonable efforts when considering the agency's request for permanent custody, the trial court specifically found that FCCS  made reasonable efforts to prevent or eliminate the need for removal of said child from the child's own home, and that reasonable efforts have also been made to finalize the permanency plan in effect for the child. Based on our review of the record, this determination was not against the manifest weight of the evidence.

{¶ 25} The record shows that a case plan was developed and efforts were made to assist appellant in possibly reunifying with A.F. Some of those efforts included: (1) linking her to counseling services to address the issues of schizophrenia, depression, and possible Munchausen syndrome; (2) drug screening and referrals to drug and alcohol services in the home; (3) attempting to improve the quality of her time with A.F.; and (4) the caseworker offered to have her call times changed to help her screen and, in fact, did do so on several occasions. However, appellant's incarceration, failing to cooperate with case services, and other factors prevented her from complying with the case plan.

{¶ 26} Finally, we note that appellant does not expressly present a manifest weight challenge in her assignment of error to the trial court's decision that clear and convincing evidence exists that granting FCCS's request for permanent custody is in A.F.'s best interest. Nevertheless, in the interest of justice and due to the fundamental right at stake in this appeal, we consider such a review warranted. *See, e.g., Hungler v. Cincinnati*, 25 Ohio St.3d 338, 341 (1986) (interpreting the "discretionary" language of App.R.12(A) to allow an appellate court to consider "errors not assigned by the parties"). Thus, based on our review of the record developed in the trial court, there was competent, credible evidence to support the trial court's conclusion that granting the motion for permanent custody would be in the best interests of A.F. Accordingly, the trial court's decision was not against the manifest weight of the evidence.

## IV. DISPOSITION

{¶ 27} Based on the above, we overrule appellant's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

DORRIAN, J., concurs.
LUPER SCHUSTER, J., concurs in judgment only.

_____