[Cite as *In re J.P.*, 2019-Ohio-1619.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re: | : | |
| | | **No. 18AP-834** |
| J.P., | : | (C.P.C. No. 15JU-11854) |
| (M.P. | : | (REGULAR CALENDAR) |
| Appellant). | : | |

---

## D E C I S I O N

### Rendered on April 30, 2019

---

**On brief:** *Robert J. McClaren*, for appellee Franklin County Children Services.

**On brief:** *Jinx S. Beachler*, for appellant M.P.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch.

KLATT, P.J.

{¶ 1} Appellant, M.P., the father of J.P., appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, that granted permanent custody of J.P. to appellee, Franklin County Children Services ("FCCS"). For the following reasons, we affirm that judgment.

{¶ 2} J.P. was born on September 11, 2015. At the time of J.P.'s birth, both she and her mother, J.G., tested positive for opiates. J.G. also tested positive for cocaine. J.P. exhibited symptoms of drug withdrawal, so she remained in the hospital for treatment. When M.P. visited J.P. at the hospital, he slurred his words, fell asleep, and ran into a wall. Both M.P. and J.G. had criminal histories that included charges related to drug use. Neither

parent would communicate with FCCS, thus stymieing FCCS' attempts to evaluate the parents' ability to care for J.P. upon her discharge from the hospital.

{¶ 3}   On September 25, 2015, FCCS filed a complaint that alleged that J.P. was an abused, neglected, and dependent child, and sought custody of J.P.  In response to the complaint, the trial court issued an emergency custody order for J.P. to FCCS.  On December 14, 2015, the trial court held an adjudicatory hearing regarding J.P.  Neither parent attended the hearing.  In a decision dated December 16, 2015, the trial court issued a judgment finding J.P. to be an abused, neglected, and dependent child, and committing J.P. to the temporary custody of FCCS.

{¶ 4}   FCCS developed a case plan for J.P.'s parents that required them to participate in a drug and alcohol assessment and follow all treatment recommendations, complete random drug screens, sign all necessary releases, attend parenting classes, visit J.P. consistently on a weekly basis, obtain and document a legal source of income, and secure safe and stable housing.  Neither parent complied with the requirements of the case plan.  After the annual review conducted September 23, 2016, the trial court found that J.G. had only completed one of 35 drug screens, and that screen was positive for illegal substances.  M.P. did not complete any of the 17 drug screens requested of him.  Neither J.G. nor M.P. had completed a drug and alcohol assessment or parenting classes.  Also, neither parent had maintained consistent contact with J.P. or secured stable housing.  Finally, at the time of the review, M.P. had criminal charges pending against him.  As a result of these findings, the trial court issued a decision extending FCCS' temporary custody over J.P.

{¶ 5}   On January 13, 2017, FCCS moved for permanent custody of J.P. pursuant to R.C. 2151.413(D)(1), which requires a public children services agency to move for permanent custody if a child has been in the agency's temporary custody for "twelve or more months of a consecutive twenty-two-month period."  FCCS' motion alleged that J.P. had been in the temporary custody of FCCS for 13 of the previous 22 months.  Additionally, the motion stated that both of J.P.'s parents suffered from severe chemical dependency and, at the time the motion was filed, both parents were incarcerated.

{¶ 6}   On August 21, 2017, Teresa Babb, the FCCS caseworker assigned to J.P.'s family, met with M.P. while he was confined in the Franklin County jail.  During that

meeting, M.P. told Babb that his sister, W.P., might be willing to take custody of J.P. Babb spoke with W.P. on the telephone and, in that call, W.P. confirmed her interest in accepting custody of J.P.

{¶ 7}   Ultimately, FCCS decided not to pursue placing J.P. with W.P. When M.P. disclosed W.P. as a potential placement, J.P. had been in FCCS' temporary custody for almost two years. By that time, J.P. had spent approximately one year in the care of foster parents who had already adopted J.P.'s older biological half-brother. The household included J.P.'s older half-sister, who was also a foster child. J.P. shared a close bond with her two siblings and her foster parents, who could be prospective adoptive parents. Because J.P. resided in a stable, potentially permanent home with her siblings, FCCS did not believe it was in J.P.'s best interest to uproot her and place her with a caregiver who J.P. had never met.

{¶ 8}   On February 23, 2018, a hearing on FCCS' motion for permanent custody was scheduled to occur before a magistrate. Although neither parent showed up for the hearing, W.P. did. When the magistrate asked if the parties had any preliminary matters, M.P.'s attorney made an oral motion to make W.P. a party to the custody proceedings. W.P., however, had not previously filed any written motion seeking party status or the legal custody of J.P. Due to the absence of a properly filed and served motion, the magistrate denied M.P.'s motion.

{¶ 9}   M.P.'s attorney then moved for a continuance because J.P.'s guardian ad litem had not filed a report at least seven days prior to the hearing date. The magistrate granted the continuance and rescheduled the permanent custody hearing for March 6, 2018. In response, M.P. stated that an 11-day continuance would not give W.P. enough time to file and serve a motion for legal custody of J.P. The magistrate replied:

> I'm not continuing [the hearing] for the relative to file a motion.
> I'm continuing it for an updated [guardian ad litem's] report,
> that's it.
>
> * * *
>
> [The] relative has been out there. You've known about the
> relative. You've said you've known about it. You could've filed
> [a motion identifying the relative as a potential legal custodian]
> on father's behalf. There is nothing before the Court. That is
> not the reason for the continuance.

&ast; &ast; &ast;

It's a year in.  You can call [W.P.] as a witness.

(Feb. 23, 2018 Tr. at 18-19.)

{¶ 10} M.P.'s attorney then asked the magistrate if W.P. could immediately testify as a witness instead of returning on March 6 to testify.  The magistrate denied the attorney's request, telling the attorney, "I'm not go[ing to] allow [W.P.] to &ast; &ast; &ast; testify when you're saying you're not ready.  You're either ready or you're not."  *Id.* at 19.  M.P.'s attorney then proffered W.P.'s testimony into the record.

{¶ 11} J.P.'s guardian ad litem filed a report on February 27, 2018.  The hearing on FCCS' motion for permanent custody began a week later, on March 6, 2018.  Again, neither parent attended.  Like J.P.'s parents, W.P. was also absent from the hearing.  Due to W.P.'s absence, M.P. could not call her as a witness.  Additionally, W.P. did not file a motion for legal custody either before or after the hearing.

{¶ 12} Two witnesses testified at the hearing:  Babb, the FCCS caseworker, and Michelle Martin, J.P.'s guardian ad litem.  Babb testified as to her experience with M.P., J.G., J.P., and W.P.  According to Babb, neither M.P. nor J.G. had visited with J.P. from October 2016 through March 6, 2018.  At the time of the hearing, M.P. was in prison serving a sentence for offenses that included possession of cocaine and heroin.  M.P. had not completed a drug and alcohol assessment or parenting classes.

{¶ 13} Babb testified that she first met J.G. in December 2016 when J.G. was an inmate of the Delaware County jail.  J.G. received drug treatment and attended parenting classes while incarcerated.  However, J.G. stopped communicating with Babb soon after her release from jail in May 2017.  By February 2018, J.G. was once again incarcerated. Both Babb and Martin recommended that the juvenile court award FCCS permanent custody of J.P.

{¶ 14} In a decision dated March 21, 2018, the magistrate granted FCCS permanent custody of J.P.  The magistrate found by clear and convincing evidence that J.P. had been in FCCS' temporary custody for over 12 months of a consecutive 22-month period and that it was in J.P.'s best interest for FCCS to receive permanent custody of her.  When determining whether permanent custody was in J.P.'s best interest, the magistrate considered the factors set out in R.C. 2151.414(D)(1).

{¶ 15} M.P. objected to the magistrate's decision. In a judgment dated October 24, 2018, the juvenile court denied each of M.P.'s objections and adopted the magistrate's decision. M.P. now appeals the October 24, 2018 judgment to this court.

{¶ 16} Before considering the merits of M.P.'s arguments, we must address two fundamental deficiencies in M.P.'s appellate brief. First, the brief contains no assignments of error. Pursuant to App.R. 16(A)(3), an appellant's brief must contain "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." Assignments of error are particularly important because appellate courts determine each appeal "on its merits on the assignments of error set forth in the briefs under App.R. 16." App.R. 12(A)(1)(b). Consequently, without assignments of error, an appellate court has nothing to review. *Luke v. Roubanes*, 10th Dist. No. 16AP-766, 2018-Ohio-1065, ¶ 16.

{¶ 17} Appellate courts have discretion to dismiss appeals that fail to set forth assignments of error. *CitiMortgage, Inc. v. Asamoah*, 10th Dist. No. 12AP-212, 2012-Ohio-4422, ¶ 5; *Tonti v. Tonti*, 10th Dist. No. 06AP-732, 2007-Ohio-2658, ¶ 2. Many times, however, appellate courts instead review the appealed judgment using the appellant's arguments in the interest of serving justice. *Asamoah* at ¶ 6; *Tonti* at ¶ 2. We will follow that path in this permanent child custody case.

{¶ 18} Although M.P. failed to assign any errors, he did present issues for review. We will treat those issues as assignments of error. Therefore, M.P. assigns as error:

> There is not competent and credible evidence supports [sic] the trial court's finding that:
>
> 1. There was clear and convincing evidence that shows the granting of Franklin County Children Services' request for permanent custody is in child's best interest.
>
> 2. The Magistrate did not err in refusing to hear the testimony of the paternal aunt, [W.P.], as an alternative placement.
>
> 3. It was not error to not consider the Father's sister's testimony that included her willingness to provide placement of the child and take legal custody of said child.

4.      FCCS did not violated [sic] its duty to investigate alternative relative placements, which did not violate the due process rights of the Father, as well as statutory and/or legal procedures.

5.      The [guardian ad litem] did not violate her duty to said child as the [guardian ad litem] and to the trial court, since the trial court found that she substantially discharged her duties.

6.      The Magistrate did not err by denying [W.P.] a continuance.

{¶ 19} Having resolved the first deficiency in M.P.'s brief, we turn to the second deficiency; namely, M.P.'s failure to argue each assignment of error separately. An appellant's brief must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions." App.R. 16(A)(7). A court of appeals "may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2). Thus, if an appellant fails to argue each assignment of error individually and specifically, a court of appeals may set aside the assignments of error and summarily affirm the trial court's decision. *Wigal v. Wigal*, 4th Dist. No. 06CA70, 2008-Ohio-747, ¶ 28; *Cook v. Wilson*, 165 Ohio App.3d 202, 2006-Ohio-234, ¶ 16 (10th Dist.).

{¶ 20} M.P.'s brief contains a single argument section that fails to correlate the arguments made with any particular assignment of error. In the interest of justice, we will address those arguments we can connect to an assignment of error. However, we cannot discern any argument supporting M.P.'s fourth assignment of error. By that assignment of error, M.P. asserts that FCCS failed to fulfill its duty to investigate relative placements for J.P., and FCCS' failure violated legal procedure and M.P.'s due process rights. In his argument section, M.P. does not identify the legal basis for FCCS' alleged duty to investigate relative placements or explain how FCCS' supposed dereliction of its duty deviated from legal procedure or deprived M.P. of due process. We will not make M.P.'s arguments for him. *See In re P.A.*, 10th Dist. No. 17AP-728, 2018-Ohio-2314, ¶ 16 ("An appellant has the duty to construct the arguments necessary to support the assignments of error; an appellate

court will not construct those arguments for the appellant.").  Accordingly, we overrule M.P.'s fourth assignment of error.

{¶ 21} All of M.P.'s remaining assignments of error relate to the trial court's determination that a grant of permanent custody to FCCS was in J.P.'s best interest.  As we stated above, a public children services agency must file a motion seeking permanent custody of a child if the child has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period.  R.C. 2151.413(D)(1).  When an agency files a motion seeking permanent custody of a child pursuant to R.C. 2151.413(D)(1), the juvenile court must follow the procedures and make the findings required by R.C. 2151.414 before granting the motion.  *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 26; *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 22-23.

{¶ 22} R.C. 2151.414(A)(1) requires the juvenile court to conduct a hearing on the motion for permanent custody.  The juvenile court must hold the hearing no later than 120 days after the agency files the motion for permanent custody, except that, for good cause shown, the juvenile court may continue the hearing.  R.C. 2151.414(A)(2).  The juvenile court must file a judgment disposing of the motion for permanent custody no later than 200 days after the agency files the motion.  *Id.*

{¶ 23} The juvenile court may grant permanent custody of a child to the agency "if the court determines at the hearing * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency * * * and that any of the following apply:

> "(a)  * * * [T]he child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> "(b)  The child is abandoned.
>
> "(c)  The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> "(d)  The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

"(e)  The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state."

R.C. 2151.414(B)(1)(a) through (e).

{¶ 24} Once the juvenile court decides that one of the circumstances in R.C. 2151.414(B)(1) applies, the court turns to R.C. 2151.414(D) to decide if a grant of permanent custody is in the child's best interest.  Pursuant to R.C. 2151.414(D)(1), in determining a child's best interest, the juvenile court "shall consider all relevant factors, including, but not limited to, the following:

"(a)  The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

"(b)  The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

"(c)  The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

"(d)  The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

"(e)  Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

R.C. 2151.414(D)(1)(a) through (e).

{¶ 25} An appellate court will not reverse a juvenile court's determination in a permanent custody case unless that determination is against the manifest weight of the evidence.  *In re A.N.F.*, 10th Dist. No. 17AP-905, 2018-Ohio-3689, ¶ 15; *In re J.R.*, 10th Dist. No. 17AP-698, 2018-Ohio-1474, ¶ 34; *In re T.G.*, 10th Dist. No. 17AP-411, 2018-Ohio-502, ¶ 9.  In reviewing the juvenile court's decision, an appellate court makes every reasonable presumption in favor of the judgment and the juvenile court's findings of fact.

*In re A.N.F.* at ¶ 15; *In re J.R.* at ¶ 35; *In re T.G.* at ¶ 9. If the evidence is susceptible of more than one construction, an appellate court must give it that interpretation that is consistent with the judgment. *In re A.N.F.* at ¶ 15; *In re J.R.* at ¶ 35; *In re T.G.* at ¶ 9.

{¶ 26} M.P.'s main contention in this appeal is that the juvenile court should not have granted FCCS permanent custody of J.P. when W.P. could potentially assume legal custody of J.P. "Permanent custody" is "a legal status that vests in a public children services agency * * * all parental rights, duties, and obligations * * * and divests the natural parents * * * of all parental rights, privileges, and obligations, including all residual rights and obligations." R.C. 2151.011(B)(31). "Legal custody" is

> a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

R.C. 2151.011(B)(21). A grant of legal custody of a child is intended to be permanent in nature. R.C. 2151.42(B).

{¶ 27} The possibility that a relative could provide a permanent placement for a child by assuming legal custody is relevant to the consideration of the R.C. 2151.414(D)(1)(d) best-interest factor. *See* R.C. 2151.414(D)(1)(d) (requiring a juvenile court to consider whether a legally secure permanent placement could be achieved without a grant of permanent custody to an agency).[1] That factor, in turn, helps determine whether a court should grant permanent custody to an agency and terminate a parent's rights. Consequently, a parent has standing to raise arguments regarding the possibility of a relative assuming legal custody of a child, but only to the extent that those arguments challenge the decision to terminate the parent's rights. *See In re S.C.*, 8th Dist. No. 106701, 2018-Ohio-2523, ¶ 16 (holding that a parent has no standing to assert that a juvenile court

---

[1] By acknowledging this relevance, we do not in any way depart from earlier precedent holding that nothing in R.C. 2151.414 requires a juvenile court to consider granting legal custody of a child to a relative prior to granting permanent custody to an agency. *See In re K.L.D.*, 10th Dist. No. 12AP-652, 2013-Ohio-610, ¶ 37; *In re J.C.*, 10th Dist. No. 09AP-1112, 2010-Ohio-2422, ¶ 17; *see also In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 62-64 (concluding that the juvenile court satisfied its statutory duty under R.C. 2151.414(D)(1)(d) when it found that a legally secure permanent placement could be found by placing the child in the legal custody of a relative, although the juvenile court ultimately granted permanent custody to a public children services agency because it was in the child's best interest).

abused its discretion by failing to grant a relative legal custody; rather, the challenge is limited to how the court's decision impacted the parent's rights); *In re S.G.*, 3d Dist. No. 4-16-13, 2016-Ohio-8403, ¶ 52 (same); *In re R.V.*, 6th Dist. No. L-10-1278, 2011-Ohio-1837, ¶ 15 (same); *In re Pittman*, 9th Dist. No. 20894, 2002-Ohio-2208, ¶ 70 (same).  M.P., therefore, has standing to pursue this appeal.  However, as we review M.P.'s assignments of error, we will construe them in a manner consistent with the limitation on his standing.

{¶ 28}  We will begin our analysis with M.P.'s second and third assignments of error, which are interrelated.  By these two assignments of error, M.P. argues that the juvenile court erred in not considering W.P.'s testimony when determining whether a grant of permanent custody was in J.P.'s best interest.  We are not persuaded by this argument.

{¶ 29}  First, M.P. never asked the magistrate to consider W.P.'s proffered testimony as evidence.  After the magistrate continued the permanent custody hearing to March 6, 2018, she rejected M.P.'s request to prematurely present W.P.'s testimony.  Essentially, the magistrate told M.P. that he could call W.P. as a witness during the hearing, but not prior to the hearing.[2]  When W.P. did not appear at the hearing, M.P. could not call her to the stand.  Thus, if M.P. wanted the magistrate to consider W.P.'s earlier-recorded testimony, he had to ask the magistrate to admit it as evidence at the hearing.  M.P. did not do so.  In the absence of such a request, no error occurred in disregarding the testimony.

{¶ 30}  Second, even without W.P.'s testimony, the hearing record contains evidence regarding the matters W.P. testified about and the juvenile court considered that evidence.  The FCCS caseworker testified at the hearing that W.P. had expressed willingness to assume custody of J.P.  The magistrate acknowledged W.P.'s amenability to taking custody when discussing the R.C. 2151.414(D)(1)(d) best-interest factor, i.e., "[t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."  The magistrate concluded that W.P. could not offer J.P. a legally secure placement because, even though she was willing to take

---

[2] Notably, the magistrate did not exclude W.P. from testifying at the hearing.  The purpose of a proffer is to assist a reviewing court in determining if an exclusion of evidence prejudiced the complaining party, thus warranting a reversal.  *State v. Eytcheson*, 2d Dist. No. 27650, 2018-Ohio-2036, ¶ 46.  Because the magistrate did not exclude W.P.'s testimony, a proffer was inappropriate.  Additionally, even if we were to construe the magistrate's ruling as an exclusion of evidence, M.P. never argued to the juvenile court or this court that the magistrate ruled wrongly.  Thus, neither the juvenile court nor this court have reason to consider the substance of the proffer.

custody of J.P., W.P. had never filed a motion seeking legal custody of the child. Thus, the magistrate found that no relatives were available for a permanent placement. The juvenile court concurred, stating that because W.P. did not file a motion for legal custody, the court could not consider her as a permanent placement for J.P.

{¶ 31} M.P. concedes that W.P. never filed a motion for legal custody of J.P. Additionally, M.P. does not contend that the juvenile court erred in rejecting W.P. as a legally secure permanent placement due to W.P.'s failure to file a motion for legal custody. M.P., instead, challenges the juvenile court's refusal to grant a continuance so W.P. could file a motion for legal custody. This challenge is the basis of M.P.'s sixth assignment of error.

{¶ 32} A juvenile court has broad discretion to grant or deny a continuance. *In re J.C.*, 10th Dist. 10AP-766, 2011-Ohio-715, ¶ 37. In evaluating a request for a continuance, a court considers: (1) the length of the delay requested; (2) whether the parties have requested and received other continuances; (3) the inconvenience to the parties, witnesses, opposing counsel, and the court; (4) whether the reason for the requested delay is legitimate or merely dilatory, purposeful, or contrived; (5) whether the movant contributed to the circumstances giving rise to the request for a continuance; and (6) and any other relevant factors. *Id.* at ¶ 38; *In re K.J.*, 10th Dist. No. 17AP-457, 2018-Ohio-471.

{¶ 33} During the February 23, 2018 proceeding, the magistrate refused to continue the hearing for the length of time W.P. needed to file and obtain service of a motion for legal custody. The magistrate insisted on only a short continuance because FCCS' motion for permanent custody had been pending for over a year.

{¶ 34} M.P. advances only one reason why the denial of a longer continuance constituted an abuse of discretion; namely, that it unfairly impacted him. The focus of permanent custody proceedings, however, is on the best interest of the child, not the impact on the parent. Additionally, two factors militated heavily against a continuance. First, a ruling on the motion for permanent custody was past due. As we stated above, R.C. 2151.414(A)(2) directs juvenile courts to resolve permanent custody motions within 200 days. By the time of W.P.'s first appearance in court on February 23, 2018, FCCS' motion for permanent custody had been pending for over a year. Given the lapse of the 200-day deadline, the juvenile court was justified in denying any further continuance of the hearing.

*See In re K.J.* (finding no abuse of discretion in denying a continuance of a permanent custody hearing when FCCS' motion had been pending for more than 200 days).

{¶ 35} Second, both M.P. and W.P. had ample time in which to file a motion regarding legal custody but chose not to do so. Once a child is adjudicated an abused, neglected, or dependent child, a juvenile court may award legal custody of the child to a person who, pursuant to R.C. 2151.353(A)(3), has filed a motion requesting legal custody or is identified as a proposed legal custodian in a complaint or motion filed by a party. *In re J.C.*, 10th Dist. No. 09AP-1112, 2010-Ohio-2422, ¶ 17. Thus, either M.P. or W.P. could have filed a legal custody motion any time after December 16, 2015, the date on which the juvenile court issued the judgment adjudicating J.P. an abused, neglected, and dependent child. Neither M.P. nor W.P. acted until February 23, 2018. Thus, M.P.'s and W.P.'s inaction contributed to the circumstances giving rise to the need for a continuance. Given the time constraints at issue and M.P.'s and W.P.'s procrastination, we find no abuse of discretion in the denial of a continuance to allow W.P. to file and serve a motion for legal custody.

{¶ 36} In sum, we conclude that the juvenile court had no obligation to consider W.P.'s testimony because it was not evidence adduced during the permanent custody hearing. Nevertheless, the court factored W.P.'s willingness to take custody of J.P. into its best-interest review and found that willingness irrelevant because W.P. had not filed a motion for legal custody of J.P. The juvenile court did not abuse its discretion in denying W.P. a continuance to file such a motion. Finding no error in the juvenile court's actions, we overrule M.P.'s second, third, and sixth assignments of error.

{¶ 37} We now return to M.P.'s first assignment of error. By that assignment of error, M.P. argues that the trial court erred in finding that a grant of permanent custody to FCCS was in J.P.'s best interest. M.P. asserts that the juvenile court (1) improperly applied the R.C. 2151.414(D)(2) best-interest test, and (2) failed to consider W.P.'s interaction and interrelationship with J.P. when considering the R.C. 2151.414(D)(1)(a) best-interest factor. We find that no error occurred.

{¶ 38} First, M.P. asserts that the juvenile court erred in finding that this case met the criteria set forth in R.C. 2151.414(D)(2)(b) and (d). M.P., however, is focused on the wrong division of R.C. 2151.414(D).

{¶ 39} In determining the best interest of a child, a juvenile court may apply one of two different tests. Under R.C. 2151.414(D)(1), the juvenile court weighs multiple factors (quoted above) to decide whether granting an agency permanent custody of a child is in that child's best interest. On the other hand, under R.C. 2151.414(D)(2), if the juvenile court makes the four enumerated findings, permanent custody is per se in the child's best interest and the court "shall" commit the child to the permanent custody of the agency. *In re J.R.*, 10th Dist. No. 17AP-698, 2018-Ohio-1474, ¶ 41; *accord In re M.P.*, 10th Dist. No. 10AP-478, 2010-Ohio-5877, ¶ 35 ("R.C. 2151.414(D)(2) sets forth the circumstances under which a trial court is required to grant permanent custody, while the court employing the factors in R.C. 2151.414(D)(1) considers them to determine whether the best interests of the children are served in granting the permanent custody motion.").

{¶ 40} R.C. 2151.414(D)(1) and 2151.414(D)(2) are alternative means for reaching the best-interest determination. *In re M.K.*, 10th Dist. No. 09AP-1141, 2010-Ohio-2194, ¶ 22. Where a juvenile court employs the R.C. 2151.414(D)(1) method of determining the child's best interest, the court need not also conduct the R.C. 2151.414(D)(2) analysis. *In re T.P.*, 11th Dist. No. 2018-A-0001, 2018-Ohio-1330, ¶ 27-28.

{¶ 41} Here, the juvenile court employed the factor test of R.C. 2151.414(D)(1) to decide that granting permanent custody to FCCS was in J.P.'s best interest. Therefore, the fact that the circumstances of this case do not satisfy all the criteria of R.C. 2151.414(D)(2) is irrelevant.

{¶ 42} Next, M.P. asserts that the juvenile court improperly failed to consider W.P. when weighing the R.C. 2151.414(D)(1)(a) factor, i.e., "[t]he interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child." While the juvenile court did not mention W.P. in its discussion of the R.C. 2151.414(D)(1)(a) factor, the court was aware of W.P. and her relationship with J.P. The juvenile court identified W.P. as J.P.'s paternal aunt and found, based on W.P.'s own admission, that she and J.P. had never met. Because W.P. had no interactions with J.P. and her interrelationship with J.P. was limited to their blood connection, we cannot fault the juvenile court for omitting W.P. from its discussion of the R.C. 2151.414(D)(1)(a) factor.

{¶ 43} In sum, we reject both of M.P.'s arguments under the first assignment of error. Consequently, we overrule that assignment of error.

{¶ 44} By his fifth assignment of error, M.P. argues that the guardian ad litem failed to fully perform her duties. Even if M.P. is correct, he has failed to show how the guardian's failings prejudiced him.

{¶ 45} With certain inapplicable exceptions, a juvenile court must appoint a guardian ad litem to protect the interest of any alleged abused, neglected, or dependent child. R.C. 2151.281(B). A guardian ad litem must "perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child" by a public children services agency. R.C. 2151.281(I). A guardian ad litem's failure to comply with his or her duties is not a basis for reversal of a permanent custody determination unless the parent demonstrates prejudice. *In re K.R.*, 12th Dist. No. CA2017-02-015, 2017-Ohio-7122, ¶ 22; *In re W.H.*, 3d Dist. No. 9-16-19, 2016-Ohio-8206, ¶ 79; *In re J.C.*, 4th Dist. No. 07CA833, 2007-Ohio-3781, ¶ 13.

{¶ 46} M.P. asserts that J.P.'s guardian ad litem failed to fulfill her duties because she did not visit W.P.'s home to assess its appropriateness for J.P or review the FCCS activity logs relevant to J.P. However, we are not persuaded that either alleged failing affected the juvenile court's decision, thus prejudicing M.P. W.P.'s failure to file a motion for legal custody of J.P. rendered the guardian's assessment of W.P.'s home unnecessary. Thus, the lack of a visit to W.P.'s home could not influence the juvenile court's best-interest determination. Likewise, the guardian ad litem's failure to review the FCCS activity logs resulted in no prejudice. M.P. points to no information contained in an activity log of which the guardian ad litem was unaware. In the sole activity log report admitted into evidence at the permanent custody hearing, the FCCS caseworker related a telephone conversation with W.P. in which W.P. expressed interest in taking J.P. into her home. The guardian ad litem, however, knew of W.P.'s interest and incorporated it into her report to the court. M.P., therefore, has not demonstrated that the alleged failings of the guardian ad litem prejudiced him. Consequently, we overrule M.P.'s fifth assignment of error.

{¶ 47} For the foregoing reasons, we overrule all of M.P.'s six assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

SADLER and BEATTY BLUNT, JJ., concur.

————————————