[Cite as *In re B.L.*, 2025-Ohio-4320.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

IN RE:

    B.L.,

**ADJUDICATED
NEGLECTED AND DEPENDENT
CHILD.**

[JENNIFER C., NKA
JENNIFER H. - APPELLANT]
[ANTHONY C., ET AL., -APPELLANTS]

**CASE NO. 5-24-42**

**OPINION AND
JUDGMENT ENTRY**

---

IN RE:

    W.L.,

**ADJUDICATED ABUSED,
NEGLECTED AND DEPENDENT
CHILD.**

[JENNIFER C., NKA
JENNIFER H. - APPELLANT]
[ANTHONY C., ET AL., -APPELLANTS]

**CASE NO. 5-24-44**

**OPINION AND
JUDGMENT ENTRY**

---

IN RE:

    H.L.,

**ADJUDICATED
NEGLECTED AND DEPENDENT
CHILD.**

[JENNIFER C., NKA
JENNIFER H. - APPELLANT]
[ANTHONY C., ET AL., -APPELLANTS]

**CASE NO. 5-24-45**

**OPINION AND
JUDGMENT ENTRY**

Case Nos. 5-24-42, 5-24-44, 5-24-45

**Appeals from Hancock County Common Pleas Court**
**Juvenile Division**
**Trial Court Nos. 2022 AND 0063, 2022 AND 0064, and 2022 AND 0065**

**Judgments Affirmed**

**Date of Decision:  September 15, 2025**

**APPEARANCES:**

*Linda Gabriele* for Appellant Jennifer H.

*Howard A. Elliott* for Appellants Joanne C. and Anthony C.

*Miranda M. Lobdell* for Appellee, Hancock County Job and Family Services Children's Protective Services Unit

**ZIMMERMAN, J.**

{¶1} Mother-appellant, Jennifer C., nka Jennifer H. ("Jennifer"), and grandparents-appellants, Anthony C. ("Anthony") and Joanne C. ("Joanne") (together, "the grandparents"), appeal the November 12, 2024 decision of the Hancock County Court of Common Pleas, Juvenile Division, granting permanent custody of H.L., W.L., and B.L. to the Hancock County Job and Family Services (the "agency").  For the reasons that follow, we affirm.

-2-

{¶2} The underlying proceedings commenced on July 19, 2022 when the agency filed complaints in the trial court alleging the minor children, H.L. (born in 2017), W.L. (born in 2018), and B.L. (born in 2020), were abused, neglected, and dependent children of Jennifer and Jesse L. ("Jesse").[1] The complaints followed the children's removal from Jennifer's care the previous day, which occurred after a traffic stop on Interstate 75.[2] At the time of the stop, Jennifer was operating a vehicle, also occupied by another unidentified adult, at a speed exceeding 100 miles per hour. Law enforcement found three of the children improperly restrained, discovered a loaded firearm in the vehicle, and determined both adults were intoxicated. Jennifer was arrested for operating a motor vehicle while under the influence of alcohol or drugs of abuse ("OVI") and on an outstanding warrant from Michigan for child endangerment.

{¶3} Following a probable-cause hearing on July 19, 2022, the trial court concluded that probable cause existed to believe that H.L., W.L., and B.L. were abused, neglected, and dependent children. The trial court further found that it was in the children's best interest to be placed in the emergency temporary custody of the agency, and that the agency made reasonable efforts to avoid removing the children from their home.

---

[1] Two other children of Jennifer and Jesse, V.L. and L.L., were also removed from the parents' care but are not part of these proceedings.

[2] Jesse was incarcerated at the start of the cases and remained so for the majority of the proceedings.

{¶4} On July 26, 2022, the trial court appointed a guardian ad litem ("GAL") to represent the children's interests. Following an adjudicatory hearing on September 1, 2022, the trial court, upon the consent of the parties, adjudicated the children neglected and dependent and placed them in the temporary custody of the agency. Throughout the proceedings, the trial court approved the agency's case plans and the subsequent amendments, also making the requisite reasonable efforts determinations.

{¶5} On January 12, 2024, the agency moved the trial court to grant legal custody of H.L., W.L., and B.L. to the grandparents. However, just twelve days later, the agency sought to withdraw its motion and requested an emergency change of placement. The agency's reversal was prompted by an incident in which the grandparents permitted Jennifer to have unsupervised contact with the children in violation of the case plan. During this unsupervised visit, Jennifer allowed Jesse to take B.L. from the residence, which culminated in Jesse's arrest for driving a stolen vehicle with B.L., unrestrained, inside. Consequently, on January 24, 2024, the children were removed from the grandparents' home and returned to a foster-care placement.

{¶6} After the GAL indicated a potential conflict between the children's best interests and their expressed wishes, the trial court appointed separate counsel for the children. The GAL ultimately recommended that the trial court grant permanent

custody to the agency, specifically expressing her adamant opposition to returning the children to the grandparents' care or allowing any future contact with them.

{¶7} On February 6, 2024, the agency filed motions seeking permanent custody of the children. In response, the grandparents filed motions to intervene and for legal custody, which the trial court denied following a July 29, 2024 hearing. The grandparents subsequently renewed their motions for legal custody.

{¶8} After a hearing on October 30, 2024, the trial court granted permanent custody of H.L., W.L., and B.L. to the agency on November 12, 2024. The trial court found, by clear and convincing evidence, that permeant custody was warranted under R.C. 2151.414(B)(1)(a) and (d). The trial court further found that granting permanent custody to the agency was in the children's best interest and denied the grandparents' renewed motion for legal custody.

{¶9} Jennifer filed her notices of appeal on November 24, 2024 and the grandparents filed their notices of appeal on November 27, 2024.[3] Jennifer raises three assignments of error, while the grandparents raise one assignment of error. For ease of our discussion, we will begin by addressing Jennifer's first and second assignments of error together, followed by the grandparents' assignment of error, then Jennifer's third assignment of error.

---

[3] Jesse did not file a notice of appeal.

**Mother's First Assignment of Error**

**The Trial Court's Decision Is Against The Manifest Weight Of The Evidence As The Agency Did Not Prove By Clear And Convincing Evidence That The Agency Should Be Granted Permanent Custody Of The Minor Children.**

**Mother's Second Assignment of Error**

**The Trial Court Abused Its Discretion In Finding That Permanent Custody To The Agency Was In The Minor Children's Best Interest.**

{¶10} In her first and second assignments of error, Jennifer argues that the trial court erred by granting permanent custody of H.L., W.L., and B.L. to the agency. In particular, in her first assignment of error, Jennifer challenges the weight of the evidence supporting the trial court's finding under R.C. 2151.414(B)(1)(a) that the children cannot or should not be placed with her, specifically contesting the trial court's application of the R.C. 2151.414(E) factors. Jennifer specifically argues in her second assignment of error that the trial court's decision is based on insufficient evidence, as the agency failed to present clear and convincing evidence regarding the statutory best interest factors.[4]

*Standard of Review*

{¶11} Recently, the Supreme Court of Ohio addressed the proper appellate standard of review for permanent custody cases, holding that either sufficiency of

---

[4] Jennifer frames her second assignment of error under an abuse-of-discretion standard. However, the Supreme Court of Ohio recently clarified that the proper appellate standards of review for a permanent custody determination are sufficiency of the evidence and manifest weight of the evidence, rejecting the abuse of discretion standard in these proceedings. *See In re Z.C.*, 2023-Ohio-4703, ¶ 11.

the evidence or manifest weight of the evidence applies, depending on the specific arguments raised by the appellant. *In re Z.C.*, 2023-Ohio-4703, ¶ 18. Sufficiency of the evidence concerns whether the evidence is legally adequate to support the trial courts findings. *Id.* at ¶ 13. Manifest weight of the evidence requires the appellate court to weigh the evidence and reasonable inferences, consider witness credibility, and determine whether the factfinder clearly lost its way, creating a manifest miscarriage of justice requiring that the judgment must be reversed and a new trial ordered. *Id.* at ¶ 14. *See also In re A.E.*, 2014-Ohio-4540, ¶ 28 (3d Dist.) ("A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established.").

*Analysis*

{¶12} The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). However, the rights and interests of a natural parent are not absolute. *In re Thomas*, 2003-Ohio-5885, ¶ 7 (3d Dist.). These rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 2003-Ohio-1269, ¶ 6 (3d Dist.).

{¶13} When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. *In re C.E.*, 2009-Ohio-6027, ¶ 14 (3d Dist.). R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody: (1) the trial court must find that one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) the trial court must find that permanent custody is in the best interest of the child. *In re S.G.*, 2015-Ohio-2306, ¶ 10 (9th Dist.). *See also In re Brown*, 98 Ohio App.3d 337, 343 (3d Dist. 1994). R.C. 2151.414(B)(1) provides, in relevant part, that a trial court

> may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that . . .
>
> (a) The child is not abandoned or orphaned, has *not* been in the temporary custody of one or more public children services agencies . . . for twelve or more months of a consecutive twenty-two-month period . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> . . .
>
> (d) The child *has been* in the temporary custody of one or more public children services agencies . . . for twelve or more months of a consecutive twenty-two-month period . . . .

(Emphasis added.) R.C. 2151.414(B)(1)(a), (d). *See In re A.W.*, 2017-Ohio-7786, ¶ 17 (9th Dist.) (noting "that the five factors listed in R.C. 2151.414(B)(1)(a)-(e) are

-8-

alternative findings, and that the agency need only prove one in order to satisfy the first prong of the permanent custody test"). "Prior to making a finding that a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents, the statute directs the trial court to consider all the relevant factors listed in R.C. 2151.414(E)." *In re Dn.R.*, 2020-Ohio-6794, ¶ 38 (3d Dist.).

{¶14} Under the second step of the analysis, "[i]f the trial court determines that *any* provision enumerated in R.C. 2151.414(B)(1) applies, the trial court must determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest." (Emphasis in original.) *In re A.F.*, 2012-Ohio-1137, ¶ 55 (3d Dist.). "In determining the best interest of a child, a juvenile court 'may apply one of two different tests.'" *In re S.C.*, 2022-Ohio-356, ¶ 38 (10th Dist.), quoting *In re J.P.*, 2019-Ohio-1619, ¶ 39 (10th Dist.). "'Under R.C. 2151.414(D)(1), the juvenile court weighs multiple factors . . . to decide whether granting an agency permanent custody of a child is in that child's best interest.'" *Id.*, quoting *In re J.P.* at ¶ 39. "By contrast, 'under R.C. 2151.414(D)(2), if the juvenile court makes [each of] the four enumerated findings, permanent custody is per se in the child's best interest and the court "shall" commit the child to the permanent custody of the agency.'" *Id.*, quoting *In re J.P.* at ¶ 39. "These two provisions 'are *alternative* means for reaching the best-interest determination,' and '[w]here a juvenile court employs the R.C. 2151.414(D)(1)

[multiple factor weighing] method of determining the child's best interest, the court need not also conduct the R.C. 2151.414(D)(2) [four-requisite prong] analysis.'" (Emphasis added.) *Id.*, quoting *In re J.P.* at ¶ 40.

{¶15} In determining whether granting the agency permanent custody is in the best interest of the child, R.C. 2151.414(D)(1) provides:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . ;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

{¶16} "Under R.C. 2151.414(B)(1), juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, 'by clear and convincing evidence, that it is in the best interest of the

child' to do so and that any of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies." *In re Z.C.*, 2023-Ohio-4703, at ¶ 7. "Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re S.G.*, 2015-Ohio-2306, at ¶ 10 (9th Dist.).

{¶17} In granting permanent custody of H.L, W.L., and B.L. to the agency, the trial court made two alternative findings under the first prong of the permanent-custody test. The trial court first concluded that a permanent custody disposition was warranted under R.C. 2151.414(B)(1)(d), finding that the children had been in the agency's temporary custody for twelve or more months of a consecutive twenty-two-month period. The trial court also found that permanent custody was independently warranted under R.C. 2151.414(B)(1)(a), reasoning that the children could not or should not be placed with Jennifer within a reasonable time based on the factors enumerated in R.C. 2151.414(E).

{¶18} On appeal, while Jennifer challenges the trial court's finding under R.C. 2151.414(B)(1)(a), she does not contest the trial court's alternative finding under R.C. 2151.414(B)(1)(d). Because the statute requires a finding under only one of the R.C. 2151.414(B)(1) subdivisions, and the record supports the trial court's unchallenged finding under subdivision (B)(1)(d), the first prong of the permanent-custody test is satisfied. *Accord In re B.J.P.*, 2018-Ohio-5221, ¶ 15 (3d

Dist.). Therefore, we find no error in the trial court's conclusion that one of the necessary provisions of R.C. 2151.414(B)(1) was met in these cases.

{¶19} Having resolved that the trial court did not err by concluding that one provision of R.C. 2151.414(B)(1) applies in these cases, we next address the trial court's best-interest determination under R.C. 2151.414(D)(1). Here, Jennifer argues that the record does not contain clear and convincing evidence by which the trial court could conclude that granting permanent custody to the agency was in the children's best interest.

{¶20} Regarding the best-interest factor under R.C. 2151.414(D)(1)(a), the trial court considered the children's interaction and interrelationship with their parents, siblings, relatives, and foster caregivers. Relevantly, the trial court found that, while the children appeared bonded with Jennifer, they had no relationship with Jesse and had no reported bond with the grandparents. *Compare In re M.W.*, 2020-Ohio-5199, ¶ 24 (10th Dist.) (noting that "the court recognized the significant relationship between mother and M.W."). "However, while a bond and relationship of the children to the parents is a factor, it is not controlling." *In re T.N.*, 2022-Ohio-2784, ¶ 54 (10th Dist.). That is, the "'resolution of [R.C. 2151.414(D)(1)(a)] is not limited to merely the bond between child and parent.'" *In re B.B.*, 2021-Ohio-2299, ¶ 60 (10th Dist.), quoting *In re K.R.*, 2019-Ohio-2192, ¶ 81 (10th Dist.).

{¶21} Further, the trial court noted the children were bonded with their foster parents and that a potential adoptive placement with a relative was being explored

in Arkansas, near where two of their other siblings reside.[5]  Based on this evidence, the trial court properly found this factor to be neutral.

{¶22} Regarding R.C. 2151.414(D)(1)(b)—the children's wishes—the children (ages 7, 6, and 4 at the time of the permanent custody hearing) were too young to directly express a mature preference. *See, e.g.*, *In re J.B.*, 2011-Ohio-3658, ¶ 17 (10th Dist.) (rejecting the notion that age alone is the determining factor in deciding whether a child is capable of expressing his or her desires, under R.C. 2151.414(D)(1)(b), because maturity, comprehension, and competency vary widely among those of tender years).  Specifically, the trial court noted the GAL's testimony, which conveyed that, when asked about their wishes, the children expressed a desire to live with everyone—a sentiment that the GAL characterized as them "want[ing] it all."  (Oct. 30, 2024 Tr. at 99).  Nevertheless, while the children expressed that they missed Jennifer, their wishes were not clear, leading the trial court to correctly find that this factor did not support any particular finding. *See In re J.B.* at ¶ 20.

{¶23} Concerning R.C. 2151.414(D)(1)(c)—the children's custodial history—the trial court found this factor weighed in favor of granting permanent custody.  In these cases, the trial court noted that the children had been in the agency's temporary custody for approximately 17 months when the permanent

---

[5] Investigation into this potential placement was at a standstill because Arkansas requires the agency to obtain permanent custody before it will proceed with the required Interstate Compact for the Placement of Children ("ICPC") process.

custody motions were filed, and it concluded that, during this extended period, the parents' failure to remedy the conditions leading to removal, combined with the grandparents' enabling of the parents' problematic behavior, reinforced the need for a more stable, permanent solution.

{¶24} Crucially, the evidence in the record demonstrates that Jennifer bore direct responsibility for exacerbating the duration of the children's removal from their home environment. In particular, after the State of Michigan denied the Interstate Compact on the Placement of Children ("ICPC"), which procedurally foreclosed an interstate placement, the agency presented Jennifer with a clear and viable path to reunification: relocate to Ohio, where an ICPC would be unnecessary. Jennifer's failure to pursue this option was an active choice, not a passive circumstance, that directly prolonged the children's stay in temporary custody. Indeed, this delay prevented the agency from achieving reunification and reinforced the trial court's finding that a permanent solution was necessary for the children's stability and best interest.

{¶25} As to R.C. 2151.414(D)(1)(d)—the children's need for a legally secure permanent placement—Jennifer argues this could be achieved without a grant of permanent custody, pointing to her case plan compliance and the availability of the grandparents for legal custody. However, testimony from multiple caseworkers, as well as a review of the other evidence in the record, demonstrates that neither argument is persuasive.

{¶26} To begin with, Jennifer's assertion regarding her case plan compliance—including by securing appropriate housing and living within her financial means—is not dispositive. "'A legally secure permanent placement is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs.'" *In re K.M.*, 2018-Ohio-3711, ¶ 29 (3d Dist.), quoting *In re M.B.*, 2016-Ohio-793, ¶ 56 (4th Dist.). Therefore, Jennifer's argument that she satisfied these specific case plan goals is insufficient to demonstrate that the trial court's decision that a legally secure placement could be achieved without a grant of permanent custody to the agency was not supported by sufficient evidence. *Accord In re W.J.*, 2022-Ohio-2449, ¶ 71 (3d Dist.).

{¶27} Moreover, "it is generally accepted that a trial court is not limited to considering only current compliance with case plan objectives or objectives related to housing and income in its analysis of the child's need for a legally secure permanent placement." *Id.* at ¶ 72. Indeed, "[s]ubstantial compliance with a case plan is not necessarily dispositive on the issue of reunification and does not preclude a grant of permanent custody to a children's services agency." *In re W.C.J.*, 2014-Ohio-5841, ¶ 46 (4th Dist.). The focal point is whether the parent has remedied the underlying conditions that caused the removal in the first place. *See id.* Here, the trial court found that, despite participating in services, Jennifer failed to remedy her poor parenting skills and mental health issues. This conclusion was supported by

sufficient evidence, including testimony from the ongoing Ohio caseworker, Breeann Lauer ("Lauer"), that Jennifer continued to make poor parenting choices and violate rules during visits. The trial court's finding was further bolstered by testimony from Kelli Miller ("K. Miller"), an administrator and adoption assessor with the agency, who identified the core issue as Jennifer's judgment "when people are not watching." (Oct. 30, 2024 Tr. at 112).

{¶28} Likewise, the record contains overwhelming evidence supporting the trial court's finding that legal custody with the grandparents was not a viable alternative. "The possibility that a relative could provide a permanent placement for a child by assuming legal custody is relevant to the consideration of the R.C. 2151.414(D)(1)(d) best interest factor." *In re E.C.*, 2019-Ohio-3791, ¶ 28 (10th Dist.). Here, however, the record reveals that the grandparents were unable to provide a safe environment for the children.

{¶29} Indeed, the trial court found that Joanne violated a court order by permitting Jennifer to have unsupervised contact with the children, which, according to testimony from Ohio caseworker Carrie Miller ("C. Miller"), led directly to B.L. being found unrestrained in a stolen vehicle with Jesse. *See In re W.J.* at ¶ 73. Importantly, the trial court did not find Joanne's testimony that this was a one-time mistake to be credible, noting that testimony from both the Ohio and Michigan caseworkers suggested unsupervised contact happened on multiple occasions. *See In re B.L.D.*, 2011-Ohio-3139, ¶ 15 (12th Dist.) ("In custody matters,

a juvenile court's discretion will be accorded wide deference, because the court is best suited to determine the credibility of the testimony and the integrity of the evidence.").

{¶30} Furthermore, Anthony testified that the incident was his wife's and daughter's fault, demonstrating a lack of unified responsibility for the children's safety. This evidence, combined with the GAL's adamant opposition to any further contact with the grandparents, provided clear and convincing evidence that legal custody with the grandparents was not in the children's best interest. Consequently, the trial court's conclusion that the children need a legally secure permanent placement that could not be achieved without granting the agency's motions is based on sufficient evidence.

{¶31} Finally, with respect to R.C. 2151.414(D)(1)(e)—whether any of the factors in R.C. 2151.414(E)(7)-(11) apply—the trial court found that R.C. 2151.414(E)(10) applied to Jesse, who is not a party to this appeal. The court made no finding under this subsection as it relates to Jennifer.

{¶32} For these reasons, based on the totality of the evidence, we conclude that the trial court's determination that it is in the children's best interest to grant the agency's motions for permanent custody is supported by clear and convincing evidence. Therefore, the trial court's decisions granting permeant custody of the children to the agency are not based on insufficient evidence.

{¶33} Jennifer's first and second assignments of error are overruled.

**Grandparents' Assignment of Error**

**The trial court abused its discretion in finding that permanent custody of the minor children to the agency served the best interest of the minor children, as opposed to legal custody of the children to their maternal grandparents.**

{¶34} In their sole assignment of error, the grandparents argue that the trial court erred by denying their motion for legal custody of the children.

*Standard of Review*

{¶35} On appeal, we review a trial court's decision to grant or deny a motion for legal custody under an abuse-of-discretion standard. *In re A.D.*, 2023-Ohio-2442, ¶ 58 (3d Dist.). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶36} "Ohio's juvenile courts are statutory entities, and they are able to exercise only those powers that the General Assembly confers on them." *In re A.D.* at ¶ 59. "R.C. Chapter 2151 grants a juvenile court exclusive original jurisdiction concerning a child alleged to be abused, neglected, or dependent." *Id.* "Following an adjudication of an abused, neglected, or dependent child, R.C. 2151.353(A) provides the juvenile court with certain dispositional alternatives for the child." *Id.* at ¶ 60. "Among the juvenile court's dispositional alternatives is granting legal

custody of the child to a person identified in the complaint or in a motion filed prior to the dispositional hearing." *Id.* at ¶ 61.

{¶37} "'[T]he award of legal custody is "not as drastic a remedy as permanent custody."'" *Id.*, quoting *In re J.B.*, 2016-Ohio-2670, ¶ 32 (3d Dist.), quoting *In re L.D.*, 2013-Ohio-3214, ¶ 7 (10th Dist.). "Unlike granting permanent custody, the award of legal custody does not divest parents of their residual parental rights, privileges, and responsibilities." *Id.* Consequently, since a parent's right to regain custody is not permanently foreclosed, "the standard the trial court uses in making its determination in a legal custody proceeding is the less restrictive 'preponderance of the evidence.'" *In re B.P.*, 2015-Ohio-5445, ¶ 19 (3d Dist.), quoting *In re M.J.M.*, 2010-Ohio-1674, ¶ 9 (8th Dist.). "'Preponderance of the evidence' means evidence that is more probable, more persuasive, or of greater probative value." *Id.*

{¶38} "At a dispositional hearing involving a request for legal custody, the focus is on the best interest of the child." *In re A.D.* at ¶ 63. While R.C. 2151.353(A)(3) does not explicitly enumerate factors for determining a child's best interest in legal custody matters, juvenile courts may find guidance in the factors outlined for permanent custody determinations under R.C. 2151.414(D)(1) or for private custody disputes under R.C. 3109.04(F)(1). *Id.* at ¶ 64.

{¶39} R.C. 2151.353(A)(3) authorizes the court, when adjudicating a child as abused, neglected, or dependent, to award legal custody of the child to either

parent or any other person who has properly requested legal custody. Specifically, this provision requires that any person identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing must sign a statement of understanding acknowledging (at a minimum) the provisions identified in R.C. 2151.353(A)(3).

{¶40} On appeal, the grandparents contend that the trial court abused its discretion by granting permanent custody of H.L., W.L., and B.L. to the agency as opposed to placing them in their legal custody. In particular, they contend that the trial court disproportionately focused on a single incident of poor judgment while ignoring the eight months that the children were otherwise safely in their care, and by relying on what they characterize as biased and incomplete reports from the GAL, who never visited their home. The grandparents' argument is not supported by the record.

{¶41} In its detailed decision, the trial court addressed the grandparents' suitability and found them *not* to be a viable placement. Critically, contrary to the grandparents' contention on appeal, the trial court's determination was not based on a single mistake, but on several key findings. *Compare at In re H.H.*, 2024-Ohio-686, ¶ 68 (6th Dist.). First, the trial court explicitly found that Joanne's testimony that she only violated the court order once was not credible, noting that testimony from both the Ohio and Michigan caseworkers indicated unsupervised contact happened on multiple occasions. *See In re A.B.*, 2013-Ohio-3405, ¶ 43 (12th Dist.).

Second, the court highlighted Anthony's testimony in which he blamed his wife and daughter for the incident and refused to accept any responsibility, demonstrating a lack of unified accountability for the children's safety. Finally, the trial court's decision was supported by the GAL's adamant opposition to placing the children with the grandparents.

{¶42} While the grandparents identify factors that could weigh in their favor, such as the eight-month placement period, the trial court's careful consideration of their inability to follow court orders, their enabling of the parents' dangerous behavior, and their lack of credibility provided a reasonable basis for denying their motions. *See In re H.H.* at ¶ 70. Therefore, the trial court's determination that legal custody with the grandparents was not in the children's best interest was not arbitrary, unreasonable, or unconscionable. Thus, the trial court did not abuse its discretion by denying the grandparents' motions for legal custody of the children.

{¶43} The grandparents' assignment of error is overruled.

### Mother's Third Assignment of Error

**The Trial Court Committed Prejudicial Error In Finding That The Agency Made Reasonable Efforts For The Minor Children To Return To The Custody of Appellant-Mother.**

{¶44} In her third assignment of error, Jennifer argues that the trial court erred by granting permanent custody of H.L., W.L., and B.L. to the agency because the agency failed to make reasonable efforts toward reunification.

*Standard of Review*

**{¶45}** "We review under an abuse-of-discretion standard a trial court's finding that an agency made reasonable efforts toward reunification." *In re A.M.*, 2015-Ohio-2740, ¶ 24 (3d Dist.). Again, an abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

**{¶46}** "'Reasonable efforts' has been defined as the state's efforts, after intervening to protect a child's health or safety, to resolve the threat to the child before removing the child from the home or to return the child to the home after the threat is removed." *In re I.H.*, 2020-Ohio-4853, ¶ 23 (6th Dist.), citing *In re C.F.*, 2007-Ohio-1104, ¶ 28. However, "[n]o one section of the Revised Code addresses the concept of reasonable efforts." *In re C.F.* at ¶ 29. "Overall, Ohio's child-welfare laws are designed to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.'" *Id.*, quoting R.C. 2151.01(A). "To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit." *Id.*

**{¶47}** In particular, under R.C. 2151.419, when a trial court

> removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency . . . has made reasonable efforts to

prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

R.C. 2151.419(A)(1). The Supreme Court of Ohio

determined that the trial court is not obligated, under R.C. 2151.419, to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing *unless* the agency has not established that reasonable efforts have been made prior to the hearing.

(Emphasis in original.) *In re N.R.S.*, 2018-Ohio-125, ¶ 25 (3d Dist.), citing *In re C.F.* at ¶ 41, 43 (concluding that the reasonable efforts determination under R.C. 2151.419 does not apply to permanent-custody motions under R.C. 2151.413 or to hearings on such motions under R.C. 2151.414).

According to the Ohio Supreme Court, the trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state."

*In re B.S.*, 2015-Ohio-4805, ¶ 36 (3d Dist.), quoting *In re C.F.* at ¶ 41.

{¶48} In these cases, the trial court made its reasonable efforts finding under R.C. 2151.419 in its entries finding probable cause to remove the children from their home. "Consequently, the trial court was not required to make any further reasonable-efforts findings." *In re W.J.*, 2022-Ohio-2449, at ¶ 87 (3d Dist.). "'Stated another way, because the trial court previously made the requisite R.C. 2151.419 "reasonable efforts" findings, it was not required to again make that

-23-

finding at the hearing on the agency's motion[s] for permanent custody filed under R.C. 2151.413.'" *Id.*, quoting *In re B.J.P.*, 2018-Ohio-5221, at ¶ 18 (3d Dist.).

{¶49} Notwithstanding that it was not required to do so, the trial court again made a reasonable-efforts finding in its entries granting permanent custody, documenting the services employed by the agency. Specifically, the trial court found the agency had "conducted a search for relatives, an ICPC into [Jennifer's] home, an ICPC into a relative's home, a relative placement, case plan services, parenting education for [Jennifer], mental health and substance abuse counseling for [Jennifer] and case management for both parents." (Nov. 12, 2024 JE).

{¶50} Nevertheless, Jennifer contends that the agency failed to make reasonable efforts toward reunification, centering her argument on the challenges posed by her living in Michigan while the case was in Ohio and pointing to the denial of the ICPC as a primary barrier to reunification. However, we are not persuaded by Jennifer's argument. Instead, our review of the record reveals that the agency's reunification efforts were reasonable and diligent under the circumstances.

{¶51} Importantly, "'"[c]ase plans are the tools that child protective service agencies use to facilitate the reunification of families who . . . have been temporarily separated."'" *In re A.M.*, 2015-Ohio-2740, at ¶ 25 (3d Dist.), quoting *In re T.S.*, 2015-Ohio-1184, ¶ 26 (3d Dist.), quoting *In re Evans*, 2001 WL 1333979, *3 (3d Dist. Oct. 30, 2001). "'To that end, case plans establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve

reunification.'" *Id.*, quoting *In re T.S.* at ¶ 27. "'Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan.'" *Id.*, quoting *In re T.S.* at ¶ 27. "'"Nevertheless, the issue is not whether there was anything more that [the agency] could have done, but whether the [agency's] case planning and efforts were reasonable and diligent under the circumstances of this case."'" *Id.*, quoting *In re T.S.* at ¶ 27, quoting *In re Leveck*, 2003-Ohio-1269, at ¶ 10 (3d Dist.). "'"Reasonable efforts" does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible.'" *In re H.M.K.*, 2013-Ohio-4317, ¶ 95 (3d Dist.), quoting *In re M.A.P.*, 2013-Ohio-655, ¶ 47 (12th Dist.). "'We also note that the statute provides that in determining whether reasonable efforts were made, the child's health and safety is paramount.'" *In re A.M.* at ¶ 25, quoting *In re T.S.* at ¶ 27, citing R.C. 2151.419(A)(1).

{¶52} Here, the record reflects that the agency's efforts were consistently undermined by Jennifer's own choices. For example, the ICPC for her home was not denied because of agency inaction, but because Michigan authorities cited her failure to have a legal source of income and her failure to add her new husband to her lease, placing her housing at risk. Critically, after the ICPC was denied, Jennifer also failed to act on the agency's reasonable suggestion to relocate to Ohio, which would have eliminated the primary barrier to reunification.

**{¶53}** Furthermore, despite the services offered, Jennifer ultimately violated a direct court order by having unsupervised contact with the children, which led to one of the children being endangered in a stolen vehicle with Jesse. Therefore, the record supports the trial court's conclusion that the agency made reasonable efforts and that Jennifer failed to remedy the conditions necessitating the children's removal. Thus, based on the record before us, we conclude the trial court did not abuse its discretion by determining that the agency made reasonable efforts toward reunification.

**{¶54}** Jennifer's third assignment of error is overruled.

**{¶55}** Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**WALDICK, P.J. and WILLAMOWSKI, J., concur.**

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgments of the trial court are affirmed with costs assessed to Appellants for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

William R. Zimmerman, Judge

Juergen A. Waldick, Judge

John R. Willamowski, Judge

DATED:
/hls